IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS JAMES BULLES | : | CIVIL ACTION |
| v. | : | NO. 07-2889 |
| LOUIS HERSHMAN, et al. | : | |

## ORDER

AND NOW, this 19th day of February, 2009, it is hereby ORDERED Defendants' Motion for Summary Judgment (Document 25) is GRANTED and Plaintiff's Motion for Summary Judgment (Document 26) is DENIED. Judgment is entered in favor of Defendants Louis Hershman, David Howells, Edwin Pawlowski, and the City of Allentown, and against Plaintiff Dennis James Bulles. The Clerk of Court is directed to mark the above-captioned case CLOSED.

BY THE COURT:

_____
Juan R. Sánchez, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS JAMES BULLES | : CIVIL ACTION |
| v. | : NO. 07-2889 |
| LOUIS HERSHMAN, et al. | : |

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                                      **February 19, 2009**

Dennis James Bulles, a registered sex offender in Pennsylvania, asks this Court to declare unconstitutional and permanently enjoin enforcement of an Allentown, Pennsylvania ordinance which limits the areas in which unregistered sex offenders may reside.[1] Because Bulles is not a member of the affected group, he does not have standing to challenge the ordinance. The Court therefore will grant summary judgment in favor of Defendants – former Allentown City Councilman Louis Hershman, Councilman David Howells, Mayor Edwin Pawlowski, and the City of Allentown.

## FACTS

In 1997, Bulles pled guilty to statutory rape and incest in which the victim was a 13-year-old girl. As a result of his conviction, Bulles was required to register as a sex offender pursuant to Megan's Law, 42 Pa. C.S. 9795.[2] In September 2004, Bulles was paroled, and he complied with the registration requirements of Megan's Law. In December 2004, Bulles moved to Allentown, where

---

[1] Bulles brings his constitutional claims under 42 U.S.C. § 1983.

[2] Failure to comply with the registration requirements of Megan's Law is a criminal offense under 18 Pa. C.S. § 4915.

1

he lived at Oxford House, a transitional living facility for parolees. In July 2005, Bulles was incarcerated for a parole violation.[3] On December 22, 2005, Allentown adopted Ordinance No. 14347, entitled "Article 733 Sexual Offenders and Sexual Predators Residence Prohibition" (Ordinance). Allentown, Pa., Gen. Offenses Code § 733. The Ordinance provides:

> It is unlawful for any person who has been convicted of a violation of Section 9795.1 of Megan's Law II, 42 P.A.C.S. § 9795.1 (relating to registration), in which the victim of the offense was less than sixteen (16) years of age, to establish a permanent or temporary residence within two thousand five hundred (2,500') feet of any school, childcare facility, park or playground.[4]

§ 733.1. Section Two of the Ordinance states: "City Council shall supply or cause to be supplied to the Pennsylvania Board of Probation and Parole a duly certified copy of this Ordinance to inform the state and county prison and probation and parole personnel about the limitations on residence set forth in this Ordinance." § 733.99. When asked at deposition what the council was thinking when it adopted the Ordinance, a co-sponsor of the Ordinance, former Councilman Hershman, stated, "as a councilman you're always worried about public safety for the community you serve. . . . We felt we had our share in Allentown based on Megan's Law where they have to register and we don't want – we didn't want any more in Allentown because of our concern for public safety." Hershman Dep. at 4-5. Hershman later stated he understood the Ordinance to "kick in" only if a sex offender failed to register pursuant to Megan's Law. *Id.* at 13.

Bulles was re-paroled in August 2006; however, he remained imprisoned until October 2007

---

[3]Bulles violated his parole by leaving an area without obtaining his parole officer's permission.

[4]The Ordinance references Megan's Law, which requires certain sex offenders to register with the Pennsylvania State Police. 42 Pa. C.S. § 9795.1. Violators of the Ordinance are subject to a maximum fine of $500, maximum 60-day period of imprisonment, and/or maximum 90 days of community service. Allentown, Pa., Gen. Offenses Code § 733.99.

because he did not have an approved place to live. Bulles submitted a series of home plans to the Pennsylvania Board of Probation and Parole (the Board).[5] The Board refused to approve three home plans in which Bulles listed his residence at Oxford House. Bulles testified that, after his third home plan was rejected, parole officer Gerald Arnoldini told him, "essentially Allentown is closed to sex offenders."[6] Bulles Dep. at 13. Bulles also testified Arnoldini told him to stop naming Allentown as his prospective residence in his home plans because the division of the Board which investigates home plans was unwilling to consider approving home plans which named Allentown. *Id.* at 13-14.

The Board eventually approved Bulles's home plan with a residence in Reading, Pennsylvania. Bulles registered in accordance with Megan's Law upon his re-parole.

## DISCUSSION

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When confronted with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (citation and internal quotation marks omitted).

Defendants argue Bulles has no standing to challenge the Ordinance because he cannot show

---

[5]Bulles testified that, once approved for parole, prisoners are required to create home plans, which are signed by an outside party – in Bulles's case, a prospective employer – and signed by the prisoner. Bulles Dep. at 13. The prisoner then submits the plan to a division of the Board which investigates the plan's suitability. *Id.*

[6]Bulles testified he also read a newspaper article in the Morning Call which suggested the Ordinance prohibited sex offenders from residing in Allentown. Bulles Dep. at 15.

its enforcement caused him any harm nor can he show prohibition of its enforcement would redress his alleged harm. In the alternative, Defendants argue Bulles's § 1983 claim fails as a matter of law. The Court will address Defendants' standing argument first, and then address the constitutional issues in connection with analysis of Bulles's motion for summary judgment.

"The 'irreducible constitutional minimum' of standing under Article III requires a plaintiff to establish three elements: *an injury in fact*, i.e., an invasion of a legally protected interest that is actual or imminent, and concrete and particularized, as contrasted with a conjectural or hypothetical injury; *a causal connection* between the injury and the conduct complained of; and *substantial likelihood of remedy* – rather than mere speculation – that the requested relief will remedy the alleged injury in fact." *Penn. Prison Soc'y v. Cortes*, 508 F.3d 156, 160-61 (3d Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (emphasis in original). Each element of standing is "an indispensable part of the plaintiff's case, [and] each of these elements must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the summary judgment stage, "the plaintiff can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts" to establish standing. *Id.* (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted). Assuming Bulles can show he has suffered a cognizable injury-in-fact, Bulles cannot show the remaining elements of standing: causation and redressability.

The causation element requires "a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S.

4

at 560 (citation, alterations, and internal quotation marks omitted). On its face, the Ordinance applies only to sex offenders who have been convicted of violating the registration requirements of Megan's Law. Allentown, Pa., Gen. Offenses Code § 733.2. Bulles each time complied with Megan's Law upon his release from prison, and therefore the Ordinance does not restrict his choice of residence within Allentown.

Bulles also fails to identify any action taken by Defendants that resulted in his inability to secure a residence in Allentown. Mayor Pawlowski stated in an affidavit: "The City of Allentown has not taken, and does not intend to take, any official action to prohibit Mr. Bulles from living at any location in the City of Allentown as a result of the residency restrictions contained in Ordinance 14347." Pawlowski Aff. at ¶ 5. This proclamation of prosecutorial intent might be insufficient if the Ordinance's terms applied to Bulles. *Cf. Conchatta v. Miller*, 458 F.3d 258, 265 (3d Cir. 2006) ("[T]he mere fact that an agency does not currently intend to apply a statute in an unconstitutional manner cannot have the effect of an explicit limiting construction."). In this case, however, because Bulles registered pursuant to Megan's Law, the Ordinance does not apply to him and city officials therefore have no authority to use it to prevent Bulles from residing anywhere in Allentown.

Bulles's inability to reside in Allentown was "the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations, citation, and internal quotation marks omitted). It is undisputed the Board had complete authority over whether Bulles's proposed home plans were accepted or rejected. Bulles does not offer any evidence which suggests any Defendant in this case either prevented Bulles from residing in Allentown upon his release or had

5

the power to do so.[7]

Similarly, Bulles cannot show the relief he requests from this Court will redress the harm alleged. The Board has sole authority to approve Bulles's place of residence. Even if this Court were to declare the Ordinance unconstitutional and enjoin Defendants from enforcing it, the Board would retain absolute discretion to continue prohibiting Bulles from living in Allentown. Such judicial action might prompt the Board to change its position on the matter, but such a result is merely speculative and therefore insufficient to establish redressability for standing purposes. *See Lujan*, 504 U.S. at 561 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (citation and internal quotation marks omitted).

This Court concludes Bulles is unable to satisfy the causation and redressability elements of standing and therefore will grant Defendants' motion for summary judgment.

In his motion for summary judgment, Bulles argues the Ordinance violates his constitutional rights in four ways: the Ordinance constitutes a bill of attainder; the Ordinance constitutes an ex post facto law; the Ordinance violates the Due Process Clause; and the Ordinance violates the Equal

---

[7]The Court rejects Bulles's assertion that, any time an action of a municipality has an "exclusionary effect," an excluded individual has standing to challenge such action. First, the required elements of standing are well-settled law. *Fair Housing Council of Suburban Phila. v. Main Line Times*, 141 F.3d 439, 441 (3d Cir. 1998). Second, the cases cited by Bulles in support of his novel standing argument are distinguishable from the instant case in at least one important respect – in each case, the challenged provision applied on its face to the plaintiff. *See Conchatta v. Miller*, 458 F.3d 258, 265 (3d Cir. 2006) (bar owner and employee dancers challenged statute prohibiting immoral, improper, or lewd entertainment at any business possessing a liquor license); *Belitzkus v. Pizzigrilli*, 343 F.3d 632 (3d Cir. 2003) (indigent candidate for public office challenged statute requiring payment of a fee in order to have one's name placed on the ballot); *Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792 (3d Cir. 1991) (organization whose members sought employment with municipal government but were rejected due to non-resident status challenged municipal ordinance which restricted employment to town residents); *Hornstine v. Twp. of Morrison*, 263 F. Supp. 2d 887 (D.N.J. 2003) (candidate for valedictorian challenged proposed amendment to school rules governing valedictorian award).

Protection Clause. Bulles also asserts the Ordinance violates Pennsylvania's regulatory scheme governing parole. The Court has already found Bulles has no standing to bring these claims. Alternatively, Bulles's summary judgment motion fails because he has not presented sufficient evidence to show there is no issue of material fact and he is entitled to judgment as a matter of law. *See Schlegel*, 269 F. Supp. 2d at 615 n.1 ("When confronted with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.") (citation and internal quotation marks omitted).

The Constitution prohibits legislative bodies from enacting bills of attainder or ex post facto laws. U.S. Const. art. I, § 9, cl. 3. "Under the Ex Post Facto Clause, the government may not apply a law retroactively that 'inflicts a greater punishment, than the law annexed to the crime, when committed.'" *Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1247 (3d Cir. 1996) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798)). "Under the Bill of Attainder Clause, legislatures are forbidden to engage in 'legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial.'" *Id.* (quoting *United States v. Brown*, 381 U.S. 437, 448-49 (1965)) (alteration omitted). Both prohibitions "only apply to those situations in which the injury complained of constitutes an imposition or exaction of a 'criminal' rather than a 'civil' nature." *Myrie v. Comm'r, N.J. Dep't of Corrections*, 267 F.3d 251, 255 (3d Cir. 2001) (quoting *Rex Trailer Co. v. United States*, 350 U.S. 148, 154 (1956)).

In determining whether the Ordinance imposes a civil restraint or a criminal penalty, the Court must first consider the Allentown council's intent in enacting the Ordinance. *See Smith v. Doe*, 538 U.S. 84, 92 (2003). The Supreme Court has instructed:

> If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

*Id.* (alterations, citations, and internal quotation marks omitted). As an initial matter, Bulles has offered no evidence the Allentown council intended to punish any sex offender by enacting the Ordinance. Moreover, the Ordinance contains a section which explicitly states the legislative intent:

> It is the intent of this Section to serve the City of Allentown's compelling interest to promote, protect and improve the health, safety and welfare of the citizens of the City by creating areas around locations where children regularly congregate in concentrated numbers wherein certain sexual offenders and sexual predators are prohibited from establishing temporary or permanent residence.

Allentown, Pa., Gen. Offenses Code § 733.1. This statement is strong evidence the Allentown council intended the Ordinance to be a civil regulation. *See Smith*, 538 U.S. at 93-94 ("[W]here a legislative restriction is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment.") (citations and internal quotation marks omitted). The Court concludes the Allentown council did not intend the Ordinance to be a criminal penalty.

The Court must next consider whether the Ordinance "was nonetheless so punitive in effect as to negate the legislature's intent to create a civil, non-punitive regulatory scheme." *Doe v. Miller*,

8

405 F.3d 700, 719 (8th Cir. 2005); *see also Smith*, 538 U.S. at 97. The following factors guide the Court's analysis: "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Smith*, 538 U.S. at 97.

First, the challenged prohibition traditionally has not been regarded as a punishment. As an initial matter, residency restrictions for sex offenders have little historical meaning because they are a relatively recent phenomenon. *Miller*, 405 F.3d at 720; *see also Doe v. Baker*, No. 05-2265, 2006 WL 905368, at *3 (N.D. Ga. Apr. 5, 2006). Bulles argues the Ordinance constitutes a banishment, which traditionally has been regarded as a punishment. *Smith*, 538 U.S. at 98. The analogy between banishment and the Ordinance's residency restriction fails, however, because banished offenders were expelled entirely from their communities, *see id.*, and the Ordinance merely prohibits certain sex offenders from residing near places where children congregate; it does not "prohibit them from accessing areas near schools or child care facilities for employment, to conduct commercial transactions, or for any purpose other than establishing a residence." *Miller*, 405 F.3d at 719; *see also Baker*, 2006 WL 905368, at *3.

Second, the Ordinance's residency restriction is not such a severe disability or restraint as to constitute a criminal penalty. The paradigmatic affirmative disability or restraint is incarceration. *Smith*, 538 U.S. at 100. Lesser impositions, *e.g.*, probation and supervised release, also have been considered disabilities and restraints. *Id.* at 101. The Ordinance's requirements constitute an affirmative disability and restraint in that certain sex offenders may not live where they please. The Ordinance does not constitute such a severe restraint, however, to amount to a criminal penalty.

9

Legislatures may adopt regulations imposing significant restraints to protect community health and safety. *See, e.g., Kansas v. Hendricks*, 521 U.S. 346 (1997) (holding involuntary commitment of mentally ill, recidivist sex offenders was non-punitive measure).

Third, the Ordinance's prohibition may have some deterrent and retributive effects, however, any such promotion of the traditional aims of punishment is incidental and consistent with the Ordinance's regulatory purpose of preventing harm to children. *See Smith*, 538 U.S. at 102 ("Any number of governmental programs might deter crime without imposing punishment. 'To hold that the mere presence of a deterrent purpose renders such sanctions "criminal" would severely undermine the Government's ability to engage in effective regulation.'") (quoting *Hudson v. United States*, 522 U.S. 93, 105 (1997)) (alteration omitted).

Finally, the Ordinance has a rational connection to a non-punitive purpose and is not excessive. The rational-connection element is a "most significant factor" in the Court's determination the Ordinance is not a criminal penalty. *See Smith*, 538 U.S. at 102. Bulles argues the Ordinance is not rationally connected to its stated purpose, citing social scientific research which suggests sex offender residency restrictions are ineffective. Rational basis review, however, is a "very deferential standard." *Doe v. Penn. Bd. of Probation & Parole*, 513 F.3d 95, 115 (3d Cir. 2008) (citation and internal quotation marks omitted). "A statute is not deemed punitive simply because it lacks a close or perfect fit with the non-punitive aim it seeks to advance." *Smith*, 538 U.S. at 102. The question before the Court is not "whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105. In this case, the Allentown council concluded preventing sex offenders who failed to register as such from

10

residing near places where children congregate could prevent recidivist assaults on children. Even if the Ordinance is not the most effective means to protect the community, it is rationally connected to this goal and not excessive in light of this purpose.

Bulles also fails to show he is entitled to judgment as a matter of law with respect to his Due Process and Equal Protection claims. Both challenges require the Court to conduct rational basis review. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest."); *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997) ("[W]here fundamental rights or interests are not implicated or infringed, state statutes are reviewed under the rational basis test. . . . Under rational basis review, a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature could rationally conclude was served by the statute.").[8] The Court has already concluded the Ordinance is rationally related to the Allentown council's goal of protecting children.

Bulles asserts a single legal claim in this suit: violation of § 1983. Bulles's final argument in support of this claim is the Ordinance is preempted by Pennsylvania's parole regulations. "To

---

[8] Bulles asserts individuals have a fundamental right to travel, and concomitant right to select a residential location, and the Ordinance infringes upon this right. There is a fundamental right to interstate travel, but such a right is not at issue in this case. *United States v. Guest*, 383 U.S. 745, 757 (1966). The Ordinance does not affect the right of free interstate travel, nor does it affect the right of free intrastate travel, because it only restricts offenders' choice of residence, not offenders' free movement. *See Doe v. Miller*, 405 F.3d 700, 712-13 (8th Cir. 2005). Furthermore, there is no fundamental right to live where one wants to live. *See id.* at 714.

11

state a claim under Section 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation." *West v. Atkins*, 487 U.S. 42, 48 (1988). Bulles's claim the Ordinance is preempted by the Board's parole regulations is not a cognizable § 1983 claim because it presents a question solely of Pennsylvania law.

Bulles has failed to show there is no genuine issue of material fact such that he is entitled to judgment as a matter of law. Accordingly, the Court will deny his motion for summary judgment.

An appropriate order follows.